S. Matt Collins, #012095
Brian J. Cosper, #027336
**FIDELITY NATIONAL LAW GROUP**
2355 East Camelback Road, Suite 900
Phoenix, Arizona 85016
Telephone: 602.889.8150
Facsimile: 602.889.8155
matt.collins@fnf.com
brian.cosper@fnf.com
*Attorneys for CWB Holdings, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In RE:<br><br>PATRICIA MARCELLO ANDERSON and ANTHONY MARCUS ANDERSON,<br><br>Debtor, | No. 2:14-bk-12221-GBN<br><br>Adv. No. 2:14-ap-00927-GBN |
| CWB HOLDINGS, LLC<br><br>Plaintiff<br><br>v.<br><br>ANTHONY MARCUS ANDERSON and PATRICIA MARCELLO ANDERSON, husband and wife,<br><br>Defendants | **COMPLAINT TO BAR DISCHARGE OF DEBT**<br><br>(Assigned to the Honorable George B. Nielsen) |

CWB Holdings, LLC ("CWB"), for its complaint against Defendants/Debtors Anthony and Patricia Anderson (the "Andersons") to bar discharge of debt due to CWB pursuant to 11 U.S.C. §§ 523 and 727, alleges as follows:

1. CWB is an Arizona limited liability company doing business in Arizona.

2. The Andersons are husband and wife and residents of Arizona and at all times relevant to this complaint were acting for and on behalf of their marital community.

3. This Court has jurisdiction over this action pursuant to 11 U.S.C. § 523 and venue is proper under 28 U.S.C. § 1408.

4. This is a core proceeding pursuant to 11 U.S.C. § 157 and this matter is properly filed as an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

5. The Andersons filed a Chapter 7 bankruptcy petition on August 7, 2014.

**THE ANDERSONS' WILFULL AND MALICIOUS CONDUCT**

6. In 2005, the Andersons engaged in oral and written negotiations to purchase a commercial building located at 8727 E. Via De Commercio Road in Scottsdale, Arizona (the "Via De Commercio Building").

7. The Andersons' negotiations with the sellers ultimately fell apart and the various oral and written communications reflected material disagreements about the terms of the proposed sale.

8. Thereafter, CWB engaged in negotiations to purchase the Via De Commercio and entered into a binding contract with the sellers on January 17, 2006 whereby the Via De Commercio building would be purchased by CWB for $660,000.

9. On February 8, 2006 at 1:13 PM, the warranty deed conveying the Via De Commercio Building to CWB was recorded in the records of the Maricopa County Recorder.

10. Unknown to CWB, earlier on February 8, 2006, the Andersons filed an action for specific performance of an alleged contract to purchase the Via De Commercio Building against the sellers (the "Title Dispute Action").

11. Also unknown to CWB, the Andersons recorded a *lis pendens* against the Via De Commercio Building at 12:54 PM on February 8, 2006—a mere 19 minutes before the deed to CWB was recorded.

12. CWB learned of the *lis pendens* and demanded its release on February 16, 2006, but the Andersons refused to do so.

13. After improving the Via De Commercio Building, CWB received an offer from a third party to buy the Via De Commercio Building for $1,050,000, but the buyer ultimately refused to close because of the lis pendens recorded by the Andersons.

14. In April 2006, the Andersons concede that they never had any basis to file the Title Dispute Action or record the *lis pendens* by amending the complaint to change the plaintiff to 8727 E. Via De Commercio, LLC, a limited liability company established by the Andersons for the sole purpose of purchasing and owning the Via De Commercio Building.

15. The Title Dispute Action proceeded to summary judgment at which point the judge determined that, as a matter of law, the Andersons and 8727 E. Via De Commercio, LLC had no basis to claim an interest in the Via De Commercio Building because "no agreement, or meeting of the minds on all material terms of the real estate sale ever occurred." [*See* Exhibit 1, summary judgment ruling]

16. Final judgment in the Title Dispute Action was entered on March 28, 2008 and the judge ordered the Andersons to release the *lis pendens* within 10 days, which the Andersons refused to do.

17. CWB sent written demands to the Andersons on April 8, 2008 and June 20, 2008 requesting a release of the *lis pendens*, which the Andersons ignored.

18. Finally, the Andersons released the *lis pendens* on July 31, 2008, but only after the judge in the Title Dispute Action ordered the Andersons to appear and show cause regarding why they had disobeyed the court's final judgment and refused to release the *lis pendens*.

19. After the Andersons willful refusal to release the *lis pendens*, CWB filed a complaint against the Andersons seeking damages for wrongful recordation of the *lis pendens* under A.R.S. §§ 33-420 and 12-1191(C) (the "Wrongful Recording Action").



Case 2:14-ap-00927-GBN Doc 1 Filed 11/10/14 Entered 11/10/14 12:24:29 Desc Main Document Page 3 of 13

20. CWB moved for summary judgment on the liability portion of its wrongful recording claim under A.R.S. § 33-420 because the Andersons knew the *lis pendens* was "forged, groundless, contain[ed] a material misstatement or false claim or [wa]s otherwise invalid."

21. The judge in the Wrongful Recording Action granted CWB's motion for summary judgment finding the Andersons liable under A.R.S § 33-420 for knowingly recording groundless *lis pendens*.

22. The Wrongful Recording Action proceeded to trial by jury on the issue of damages, and on July 22, 2010, the jury returned a verdict against the Andersons in the amount of $180,000 for CWB's actual damages.

23. Under A.R.S. § 33-420, CWB was entitled to treble actual damages, and final judgment in the amount of $540,000 damages plus $142,614.92 in attorneys' fees and costs and interest accruing thereon at 10% per year was entered on September 15, 2010 (the "CWB Judgment").

24. The Andersons appealed the CWB Judgment, both as to the summary judgment ruling on liability and the jury verdict on damages, but the Court of Appeals in case number 1-CA-CV10-0791 denied the Andersons' appeal on all grounds in a memorandum decision entered December 13, 2011.

25. The Court of Appeals specifically held that the Andersons' claim to the Via De Commercio Building "'has no arguable basis [and] is not supported by any credible evidence' and is, therefore, groundless."

**<u>THE ANDERSONS' EFFORTS TO HINDER AND DEFRAUD CWB</u>**

26. After entry of the CWB Judgment, CWB engaged in collection efforts including conducting judgment debtor's examinations of Anthony Anderson and filing several garnishments, but no money was collected.

27. The Andersons avoided paying the CWB Judgment and hindered CWB's collection efforts by hiding their assets in various trusts and business entities owned and controlled by them, which were established as part of an elaborate plan intended to defraud creditors.

28. Many of the Andersons personal and real property assets have been placed in AMA Trust I and AMA Trust II (collectively the "Trusts"), which were originally funded by the Andersons as grantors/trustors.

29. Upon information and belief, the Andersons are co-trustees and "lifetime beneficiaries" of AMA Trust I, and the Andersons' three children are the "primary beneficiaries of AMA Trust I.

30. Upon information and belief, the Andersons' close friend Ken Mackler is the trustee of AMA Trust II and the Andersons' three children are the trust's "primary beneficiaries."

31. Upon information and belief, the Andersons exercise complete control over the Trusts' assets and treat them as if they were personal assets.

32. Upon information and belief, the Andersons' and their children's daily living expenses are paid from assets of the Trusts.

33. The Andersons and their children currently live in a residence located at 10170 E. Larkspur Drive, Scottsdale, Arizona (the "Larkspur Property").

34. Title to the Larkspur Property was transferred into AMA Trust I and has been transferred back and forth between AMA Trust I and the Andersons personally a number of times since, including after the Title Dispute Action and Wrongful Recording Action were filed.

35. Upon information and belief, the titles to the vehicles used by the Andersons on a daily basis were transferred into the Trusts.

36. Upon information and belief, all other personal property used by the Andersons or their children was transferred into the Trusts.

37. Vaughn-Leavitt Limited Partnership ("Vaughn-Leavitt") is an entity established for the sole purpose of investing the Trusts' assets in various other business entities.

38. Upon information and belief, Mr. Anderson makes all of Vaughn-Leavitt's investment decisions.

39. The Trusts are limited partners of Vaughn-Leavitt and hold a 99% ownership interest in Vaughn-Leavitt.

40. Upon information and belief, Knights III, Inc. is the general partner and holds the remaining 1% interest in Vaughn-Leavitt but does not have any other business purpose.

41. Upon information and belief, the Andersons control various other business entities including, but not limited to, 8723 E. Via De Commercio, LLC; UHCP, Inc.; Health II Holdings, LLC; Health II, LLC; and Health II of California, LLC (the "Anderson Entities").

42. Upon information and belief, Mr. Anderson is solely responsible for operating the Anderson Entities yet he receives no personal salary or wage for his labor.

43. Upon information and belief, neither of the Andersons receive a salary or wage from any source.

44. Instead, any and all income generated by the Anderson Entities as a result of the Andersons' labor is used to pay for the Andersons' personal living expenses.

45. Upon information and belief, the Andersons and their close friend Ken Mackler devised a scheme to transfer the sole asset of 8723 E. Via De Commercio, LLC—a commercial building located at 8723 E. Via De Commercio—out of 8273 E. Via De Commercio, LLC's name and into Mackler's through a contrived judicial foreclosure.

46. Despite no longer owning the building, 8723 E. Via De Commercio, LLC continues to collect rent from tenants.

47. Upon information and belief, the rent payments received by 8732 E. Via De Commercio, LLC constitute a significant portion of the Andersons' income.

48. The Anderson Entities are alter egos of the Andersons themselves, with the Andersons transferring money directly from the Anderson Entities into the Trusts to satisfy all personal living expenses or paying personal expenses directly out of funds generated by the Anderson Entities.

49. The Anderson Entities do not maintain separate books and commingle funds with funds belonging to the Andersons personally.

50. The Anderson Entities have failed to comply with all federal income tax filing requirements.

51. Upon information and belief, the Andersons have engaged in these activities with the intent to defraud and hinder creditors from 2002 through the present.

52. Upon discovering the Andersons' scheme to defraud creditors, CWB filed an action against the Andersons and their trusts and business entities in May 2012 alleging that the Andersons fraudulently transferred assets among and between themselves, their trusts and their business entities (the "Fraudulent Transfer Action").

53. The Fraudulent Transfer Action was set for trial in September 2014, but the Andersons filed their bankruptcy petition approximately 30 days before trial, resulting in postponement of the trial.

**COUNT I**
**(Willful and Malicious Conduct)**

54. CWB repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

55. The Andersons' conduct giving rise to the CWB Judgment described above was willful and malicious.

56. The willful and malicious nature of the Andersons' conduct was already determined in the Title Dispute Action and the Wrongful Recording Action.

57. The Andersons' willful and malicious conduct caused CWB to suffer damages in the amount set forth in the CWB Judgment, plus interest accruing thereon at the rate of 10% per year.

**COUNT II**
**(Conduct to Defraud and Hinder)**

58. CWB repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

59. All income generated by the various Anderson Entities is the direct result of the Andersons' labor and effort.

60. The Andersons have created a scheme to avoid and defraud creditors, including CWB, by sheltering assets in and diverting assets to and from the Trusts and Anderson Entities.

61. The Andersons regularly utilize income generated by the Anderson Entities to pay personal living expenses in order to avoid their creditors.

62. The above-described conduct has rendered the Andersons insolvent, without the ability to pay their existing debt owed to CWB under the CWB Judgment.

63. The above-described conduct was carried out by the Andersons with the intent to hinder, delay, or defraud CWB.

64. The above-described conduct occurred from 2002 through the present.

WHEREFORE, CWB prays for the following relief against the Andersons:

A. For an order declaring that the CWB Judgment in the principal amount of $682,614.92, plus interest accruing thereon at the rate of 10% per year from September 15, 2010 through the present, is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

B. For an order declaring that the CWB Judgment in the principal amount of $682,614.92, plus interest accruing thereon at the rate of 10% per year from September 15, 2010 through the present, is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and/or 11 U.S.C.

§ 727(a)(2)(A).

DATED this 10th day of November, 2014.

*/s/ Brian J. Cosper*

Brian J. Cosper
S. Matt Collins
**FIDELITY NATIONAL LAW GROUP**
2355 East Camelback Road, Suite 900
Phoenix, Arizona 85016
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing e-filed with the Clerk of the Court this 10th day of November, 2014.

# EXHIBIT 1

EXHIBIT 1

M|E

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
01/29/2008 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2006-050509 | 01/25/2008

HONORABLE MICHAEL D. JONES

CLERK OF THE COURT
M. L. Smith
Deputy

ANTHONY ANDERSON, et al. | DENNIS I WILENCHIK

v.

FREDERICK G DETTMANN, et al. | AARON M FINTER

ADAM E LANG
AMY REYES

MINUTE ENTRY

**NORTHEAST COURTROOM 104**

9:31 a.m. This is the time set for hearing oral argument regarding Defendants' Motion for Summary Judgment. Plaintiff is represented by counsel, Dennis I. Wilenchik and Amy Reyes. Defendant is represented by counsel, Aaron M. Finter and Adam E. Lang.

A recording of this proceeding is made by CD (FTR) in lieu of a court reporter.

Argument is heard.

IT IS ORDERED taking this matter under advisement.

10:06 a.m. Hearing concludes.

LATER:

The Court having previously taken under advisement the issues presented in Defendants' Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment, now finds as follows:

1. Plaintiffs Anthony and Patricia Anderson have sought through their amended complaint to enforce a contract for the purchase of real estate located 8727 East Via De Commercio, Scottsdale, Arizona. The Defendants, (Frederick and Brenda Dettman (the alleged sellers of the real estate) have filed a motion for summary judgment requesting that this court grant their motion as the parties had engaged in a protracted negotiation for the sale of Via De Commercio property, but had never finalized their agreement and no sale had taken place. In fact, the Dettman's have sold the subject property to a bona fide purchaser, CWB Holdings, LLC.

2. All parties have done an excellent job in presenting to the Court affidavits of the principals. However, most importantly are the documents in this case, as they form the alleged basis for the Plaintiffs' claim that a valid contract exists. Plaintiffs' Exhibit B (attached to its Statement of Facts) is a letter from the Defendants dated August 30, 2005 addressed to Plaintiff Tony Anderson. That letter discusses a price for the sale of the property and specifically notes that Defendant will prepare a formal offer to purchase for the Plaintiffs' signature and forward that with some additional terms and conditions of the sale. That letter is signed by Defendant Dettman. This letter, by itself, is not a real estate purchase contract (which is, of course, required to be in writing by Arizona Law). This letter does not contain all of the terms of the parties' agreement, and specifically expresses an intention to prepare a formal subsequent document. Exhibit C to the Plaintiffs' Statement of Facts is a formal real estate purchase contract signed only by the Plaintiff Anthony Anderson (and not his wife) on September 28, 2005. The express terms of this real estate purchase contract require it be accepted by September 15, 2005. Thus, it clearly appears to be an ineffective document (for many reasons).

3. After September 28, 2005, the parties engaged in numerous emails and written correspondence attempting to formalize and finalize their agreements. The purchase contract of September 28, 2005 contained two significant changes by Plaintiff Anderson to the proposal offered by the Dettmanns: A change in the amount of earnest money from $50,000.00 to $10,000.00, and a change in the closing date. These changes were never approved by the Dettmans.

4. Plaintiff urges that the "collective writings" of the parties evince a valid written contract; however, the subsequent writings fail to show an agreement by both parties to all terms of the real estate sales contract.

5. Defendants have argued in their motion for summary judgment, and the Court agrees, that the negotiations between the Andersons and the Dettmanns were simply negotiations and that no agreement, or meeting of the minds on all material terms of the real estate sale ever occurred.

6. The Court finds that the material facts in this case are not in dispute, and those material facts include the proposed contracts, the letters, and emails between the parties which are referred to as the "collective writings". All of these collective writings reflect a disagreement between the parties over the material terms of the real estate sale that they had attempted to negotiate. As a matter of law, the Defendant is entitled to judgment on its motion for summary judgment because the collective writings do not reflect that an agreement existed in this case.

IT IS THEREFORE ORDERED granting Defendants' (the Dettmanns and CWB Holdings) Motion for Summary Judgment.

IT IS FURTHER ORDERED denying Plaintiffs' Cross-Motion for Summary Judgment.

IT IS FURTHER ORDERED that counsel for Defendants shall lodge a Judgment consistent with this minute entry order, together with sufficient copies and postage-paid envelopes for each appearing counsel, no later than February 25, 2008.